NOT FOR PUBLICATION                                    (Doc. Nos. 1, 5)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

_____
                                          :
PATRICK GIBLIN,                           :
                                          :
                   Petitioner,            :      Civil No. 09-1286 (RBK)
                                          :
          v.                              :      **OPINION**
                                          :
UNITED STATES OF AMERICA,                 :
                                          :
                   Respondent.            :
_____   :

**KUGLER**, United States District Judge:

        This matter comes before the Court on Petitioner Patrick Giblin's ("Petitioner") Petition

to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (Doc. No. 1), and the

United States Government's ("the Government") Motion to Dismiss the Petition (Doc. No. 5).

Petitioner argues that he was denied effective assistance of counsel, that he received a sentence

that was in violation of the Ex Post Facto Clause of the United States Constitution, and that the

Court erred by not considering all relevant factors in determining his sentence.  The Government

refutes each Petitioner's contentions.  For the reasons herein expressed, the Government's

motion to dismiss is granted and the Petition is denied.

**I.      BACKGROUND**

        One June 1, 2005, a one-count Indictment was filed against Petitioner charging him with

extortion, in violation of 18 U.S.C. § 1951(a).  A Superseding Indictment was filed on July 20,

2005, and on October 12, 2005, a Second Superseding Indictment was filed against him.  The

1

Second Superseding Indictment charged Petitioner with ten counts of wire fraud and five counts of extortion.  Specifically, Counts One through Ten charged that from January 2000 to March 2005, in the District of New Jersey and elsewhere, Petitioner knowingly and willfully devised and intended to devise a scheme and artifice to defraud and to obtain money from numerous women across the United States whom he targeted using dating services.  The Second Superseding Indictment further charged that Petitioner obtained money and property from these women by means of materially false and fraudulent pretenses, representations, and promises.  For the purpose of executing and attempting to execute this scheme, Petitioner knowingly and willfully transmitted and caused to be transmitted in interstate commerce by means of wire communications, certain signs, signals, and sounds, namely Western Union money transfers to be issued and sent via computer from the victims through the Western Union mainframe computer in North Carolina to Western Union pay-out locations located throughout New Jersey.

Count One charged Petitioner with receiving money through wire transfer from a victim with the initials S.F. on March 15, 2002, in violation of 18 U.S.C. § 1343.  Counts Two through Ten each charged Petitioner with the same conduct, but each count charged a different victim and a different date.  Specifically, these counts charged conduct on September 9, 2002, September 24, 2002, October 16, 2003, August 26, 2004, September 11, 2004, November 13, 2004, November 28, 2004, December 7, 2004, and February 27, respectively.  The remaining counts charged Petitioner with five separate counts of extortion, each involving victims of Petitioner's wire fraud, in violation of 18 U.S.C. § 875(b).

After Petitioner's arrest on March 3, 2005, Assistant Federal Public Defender Christopher O'Malley was appointed to represent Petitioner.  Mr. O'Malley remained Petitioner's counsel

2

through the final disposition of this case.[1]  On May 12, 2006, Petitioner appeared before this

Court and pled guilty, pursuant to a plea agreement, to Counts One through Ten of the Second

Superseding Indictment.  As part of the plea agreement, the Government dismissed the five

counts of extortion.  The parties also stipulated to the applicable edition of the Guidelines

Manual to be used, the amount of loss, the number of victims, and a two-level downward

adjustment for acceptance of responsibility.  The parties reserved the right to litigate whether a

two-level vulnerable victim enhancement was applicable pursuant to Guidelines Manual §

3A1.1(b)(1).[2]  The parties further agreed that a sentence within the Guidelines range that resulted

from a total Guidelines offense level between 21 and 23 was reasonable.

A sentencing hearing was held before the Court on April 17, 2007, during which the

Court heard testimony from two victims concerning the application of U.S. Sentencing

Guidelines Manual § 3A1.1, the vulnerable victim enhancement.  After considering the

testimony, the Court found that the enhancement applied.  The Court determined that Petitioner's

offense level was 23, and that he had a criminal history category of VI, based on his thirty-three

prior convictions.  This finding resulted in an advisory Guidelines range of 92 to 115 months

imprisonment.  The Court considered the factors enumerated in 18 U.S.C. § 3553 and sentenced

Petitioner to 115 months incarceration, followed by three years of supervised release.

On April 17, 2007, Petitioner, filed a notice of appeal, in which he challenged only the

---

[1] Prior to his plea colloquy on March 12, 2006, Petitioner did move for appointment of new counsel.  However, Petitioner withdrew his motion at his plea colloquy.

[2] The Government reserved the right to move for the enhancement, which would result in an offense level of 23.  Petitioner reserved the right to oppose the motion, which would result in an offense level of 21.

application of the vulnerable victim enhancement.[3]  The Third Circuit affirmed the sentence and application of the enhancement on May 8, 2008.  On September 22, 2008, the Third Circuit denied Petitioner's petition for rehearing en banc.  On March 20, 2009, he filed this pro se petition seeking to vacate and correct his 115 month sentence, pursuant to 28 U.S.C. § 2255.  He alleges that his attorney was ineffective and that the Court made several errors in fashioning his sentence.  He requests a reduction in his sentence on the basis of these alleged errors.  In response, the Government filed a motion to dismiss on May 21, 2009.

## II.      STANDARD

A prisoner in federal custody may file a motion in the trial court challenging the validity of his sentence under 28 U.S.C. § 2255.  Morelli v. United States, 285 F. Supp. 2d 454, 458 (D.N.J. 2003).  Pursuant to 28 U.S.C. § 2255, a petitioner may move to vacate, set aside, or correct a sentence on the grounds "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255.  To establish a right to habeas corpus relief, a petitioner must demonstrate "that the sentence suffers from a 'fundamental defect' causing 'a complete miscarriage of justice' or 'an omission inconsistent with the rudimentary demands of fair procedure.'"  Morelli, 285 F. Supp. 2d at 458-59 (quoting United States v. DeLuca, 889 F.2d 503, 506 (3d Cir. 1989)).  Thus, Petitioner is entitled to relief only if he can establish that he is in custody in violation of federal law or the Constitution.

The Government's motion to dismiss is considered according to the standard set forth by

_____

[3] Petitioner was still represented by Mr. O'Malley when he filed his appeal.

Federal Rule of Civil Procedure 12(b)(6).  See Fed. R. Civ. P. 81(a)(4) (applying Federal Rules of Civil Procedure to "proceedings for habeas corpus . . . to the extent that the practice in those proceedings (A) is not specified in a federal statute, the Rules Governing Section 2254 Cases, or the Rules Governing Section 2255 Cases; and (B) has previously conformed to the practice in civil actions").  In deciding a motion under Federal Rule of Civil Procedure 12(b)(6), the reviewing court must consider a petitioner's allegations and all reasonable inferences drawn therefrom in the light most favorable to the petitioner.  See Doe v. Delie, 257 F.3d 309, 313 (3d Cir. 2001).  If, after considering the petitioner's allegations, "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations," the court may dismiss the § 2255 petition.  See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

## III.   DISCUSSION

Petitioner argues that habeas relief is warranted because (1) his attorney was ineffective before and during his sentencing hearing; (2) the Court did not consider all relevant sentencing factors pursuant to 18 U.S.C. § 3553(a); and (3) the sentence imposed was unreasonable.  Many of Petitioner's claims attempt to controvert various stipulations in his plea agreement with the Government.  However, by the terms of the agreement, "if the sentencing court accept[ed] a stipulation, both parties waive[d] the right to file an appeal, collateral attack, writ, or motion claiming that the sentencing court erred in doing so."[4]  Because the Court accepted the plea

---

[4] In its entirety, the waiver states:

Patrick M. Giblin knows that he has and, except as noted below in this paragraph, voluntarily waives, the right to file any appeal, any collateral attack, or any other writ or motion, including but not limited to an appeal under 18 U.S.C. § 3742 or a motion under 28 U.S.C. § 2255, which challenges the sentence imposed by the sentencing court if that sentence falls within or below the Guidelines range that results from a total Guidelines offense level of 21.  This Office will not file any appeal, motion or writ which challenges

agreement and all stipulations contained therein, the waiver is automatically implicated with respect to each stipulation.  Accordingly, the Court must consider whether the waiver is enforceable.

### A.        Enforceability of the Waiver

Waivers of a right to appeal are valid if entered into knowingly and voluntarily, unless enforcing such a waiver would result in a miscarriage of justice.  United States v. Khattak, 273 F.3d 557, 558, 562 (3d Cir. 2001).  In determining when the enforcement of a waiver of the right to appeal would result in such a miscarriage of justice, there is no "blanket rule prohibiting all review of certain otherwise valid waivers."  See id. at 562-63 (refusing to "earmark specific situations" that would warrant invalidating such a waiver).  Instead, the governing standard is whether "the error would work a miscarriage of justice."  Id. at 563.  Specifically, the court should consider: "'the clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result.'"  Id. (quoting United States v. Teeter, 257 F.3d 14, 25-26 (1st Cir. 2001)).  However, it is an "unusual circumstance" where an "error amounting to a miscarriage of justice may invalidate the waiver."  Khattak, 273 F.3d at 562.

_____

the sentence imposed by the sentencing court if that sentence falls within or above the Guidelines range that results from a total Guidelines offense level of 23.  The parties reserve any right they may have under 18 U.S.C. § 3742 to appeal the sentencing court's determination of the criminal history category.  The provisions of this paragraph are binding on the parties even if the Court employs a Guidelines analysis different from that stipulated to herein.  Furthermore, if the sentencing court accepts a stipulation, both parties waive the right to file an appeal, collateral attack, writ, or motion claiming that the sentencing court erred in doing so.

The Third Circuit has not determined whether its ruling in Khattak is equally applicable to a criminal defendant's waiver of the right to bring a motion pursuant to § 2255.  See United States v. Wilson, 429 F.3d 455, 460 n.6 (3d Cir. 2005).  However, in a non-precedential opinion, the Third Circuit indicated that a waiver of the right to collaterally attack a sentence is valid if it meets the Khattak test.  See United States v. Perry, 142 F. App'x 610, 611-12 (3d Cir. 2005) (per curiam) (concluding that district court's denial of petitioner's motion collaterally attacking his sentence was proper in light of petitioner's waiver of his right to pursue such a collateral attack).  Other circuit courts have also held that a waiver of the right to file a § 2255 motion is generally enforceable where both the plea and waiver were made knowingly and voluntarily.  See, e.g., Frederick v. Warden, Lewisburg Corr. Facility, 308 F.3d 192, 195 (2d Cir. 2002); United States v. White, 207 F.3d 336, 343-44 (5th Cir. 2002); United States v. Cockerham, 237 F.3d 1179, 1183 (10th Cir. 2001); DeRoo v. United States, 223 F.3d 919, 923 (8th Cir. 2000); Watson v. United States, 165 F.3d 486, 489 (6th Cir. 1999); Jones v. United States, 167 F.3d 1142, 1145 (7th Cir. 1999).  Likewise, district courts within this circuit have regularly held such waivers to be valid and enforceable under the Khattak standard.  See, e.g., Simon v. United States, 2006 WL 3534600, No. 05-5503, at *5 (D.N.J. Dec. 7, 2006) (dismissing § 2255 petition on ground that petitioner's waiver of his right to file a § 2255 petition was valid under Khattak standard); Darr v. United States, No. 06-0608, 2006 WL 2645119, at *2 (D.N.J. Sept. 14, 2006) (same); see also Dancy, No. 06-0070, 2006 WL 2504028, at *3 (M.D. Pa. Aug. 28, 2006) (same); United States v. Minott, No. 05-1135, 2006 WL 2372118, at *1 (W.D. Pa. Aug. 15, 2006) (same); United States v. Lam, No. 05-5530, 2006 WL 1530875, at *2-3 (E.D. Pa. June 2, 2006) (same); Prado v. United States, No. 05-0938, 2005 WL 1522201, at *2 (D.N.J. June 27, 2005) (same).

The Court agrees with these courts and finds that the standard set forth in <u>Khattak</u> applies to waivers of the right to collaterally attack a sentence pursuant to § 2255.  To hold otherwise would render such a waiver agreement essentially meaningless and would result in a mockery of the judicial system by affording criminal defendants the benefits of plea agreements, while shielding them from their own promises made under such agreements.  <u>See, e.g.</u>, <u>Khattak</u>, 273 F.3d at 561 (stating that "waivers preserve the finality of judgments and sentences imposed pursuant to valid pleas of guilt" (citation and internal quotation marks omitted)); <u>Dancy</u>, 2006 WL 2504028, at *3 (stating that to excuse a defendant's waiver would make a mockery of the Federal Rule of Criminal Procedure 11 and the judicial system).  Therefore, Petitioner's waiver is valid and enforceable if it was entered into knowingly and voluntarily and the enforcement of such would not result in a miscarriage of justice.

In this case, the <u>Khattak</u> standard is satisfied.  First, it is clear from the record that Petitioner entered into the waiver knowingly and voluntarily.  Petitioner signed the plea agreement containing the waiver.  He also signed the Application for Permission to Enter Plea of Guilty, which included the following statement: "I offer my plea of GUILTY freely and voluntarily and of my own accord with full understanding of all matters . . . ."  Appl.¶ 42.  The Court verified this at Petitioner's plea colloquy on May 12, 2006, where Petitioner informed the Court that he understood his rights and was agreeing to voluntarily waive certain rights to pursue an appeal.  A waiver of the right to appeal is knowing and voluntary where the sentencing judge inquired as to whether the defendant understood his rights and defendant received a sentence within the terms of his plea agreement.  <u>Khattak</u>, 273 F.3d at 563; <u>see also</u> <u>Dancy</u>, 2006 WL 2504028, at *3 (holding that waiver of right to file a § 2255 motion is enforceable where

8

petitioner indicated that he understood the waiver at his plea colloquy); Prado, 2005 WL

1522201, at *2 (enforcing waiver of right to bring § 2255 motion where petitioner signed plea

agreement including the waiver and stated that he understood the waiver at his plea colloquy).

Moreover, Petitioner does not allege or present any evidence that his waiver was unknowing or

involuntary.

      Second, Petitioner provides no basis for the Court to conclude that the circumstances

surrounding his sentence were so "unusual" that the enforcement of his express waiver of his

rights would result in a miscarriage of justice.  Although Petitioner does not use the phrase

"miscarriage of justice," the Court recognizes that ineffective assistance of counsel claims, if not

completely lacking in merit, could satisfy the standard.  See United States v. Shedrick, 493 F.3d

292, 298 (3d Cir. 2007); see also Teeter, 257 F.3d at 25 n.9 (enforcing waiver might work a

miscarriage of justice when "plea proceedings were tainted by ineffective assistance of counsel").

Nonetheless, the Court finds no possible miscarriage of justice in the circumstances presented by

this case.

      As an initial matter, Petitioner does not claim that the waiver itself was the product of

ineffectiveness.  Several courts have held that claims of ineffective assistance of counsel at

sentencing, as opposed to claims that the waiver or plea itself was tainted by ineffective counsel,

do not excuse knowing and voluntary waivers of post-conviction rights.  See, e.g., White, 307

F.3d at 343 ("[A]n ineffective assistance of counsel argument survives a waiver of appeal only

when the claimed assistance directly affected the validity of that waiver or the plea itself.");

Mason v. United States, 211 F.3d 1065, 1069 (7th Cir. 2000) (holding that the defendant waived

his right to bring a § 2255 motion where his motion argued ineffective assistance of counsel at

sentencing as opposed to counsel's deficient performance in negotiating the waiver); Watson, 165 F.3d at 489 (upholding waiver where petitioner's "[§] 2255 motion does not claim ineffective assistance of counsel, but rather challenges the length of his sentence, an issue clearly contemplated by, and subject to, his plea agreement"); United States v. Robinson, No. 04-0884, 2004 WL 1169112, at *3-4 (E.D. Pa. Apr. 30, 2004) (refusing to excuse defendant's waiver of his right to bring § 2255 motion where defendant's claims of ineffective assistance of counsel were based on counsel's performance at sentencing as opposed to ineffectiveness in entering into plea agreement); Simon, 2006 WL 3534600, at *7 (same).  For the same reasons, Petitioner's primary claim – that his counsel was ineffective based on events outside of the plea negotiations and proceedings – does not excuse his waiver.[5]

Even if a miscarriage of justice could result from ineffective assistance outside of plea proceedings, a waiver does not "become[ ] unenforceable simply because a defendant 'claims' . . . ineffective assistance," but only "if the record of the criminal proceeding reveal[s] that the claim that the waiver was the result of ineffective assistance of counsel [is] meritorious." United States v. Akbar, 181 F. App'x 283, 286-87 (3d Cir. May 12, 1006) (citing United States v. Monzon, 359 F.3d 110, 118-19 (2d Cir. 2004)).  As the Court discusses below, Petitioner did not receive ineffective assistance of counsel, and therefore enforcement of Petitioner's waiver would not work a miscarriage of justice.  Furthermore, even if the Court were to conclude that Petitioner's waiver is unenforceable, the Petition would still fail on the merits.

B.    **Ineffective Assistance of Counsel**

---

[5] Petitioner does claim ineffective assistance of counsel with respect to negotiating his plea agreement.  However, as discussed further below, this claim fails on its merits.

The right to effective assistance of counsel is guaranteed by the Sixth Amendment.[6]  The standard for ineffective assistance of counsel was established by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984).  To prevail on a claim of ineffective assistance of counsel, a party must establish (1) deficiency of counsel's performance; and (2) prejudice caused by the deficiency.  Id. at 687.

The first Strickland prong is an objective standard of "reasonableness under prevailing professional norms."  Id. at 688.  The Constitution requires a fair trial, not some higher quality of legal representation.  See id. at 688-89.  Thus, the standard is "highly deferential"and there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Id. at 689.  To meet this prong, a "convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  Id. at 690.  Only the most serious errors constitute deficient performance.  Id. at 687 (describing errors "so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment").

The second Strickland prong is a subjective, totality-of-the-circumstances analysis of whether counsel's conduct "actually had an adverse effect on the defense."  Id. at 693.  A speculative or hypothetical effect is not enough.  Id.  There must be "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id. at 694.  Prejudice exists only when the defendant is denied a fair trial capable of

---

[6] The Sixth Amendment provides in part: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."  U.S. Const. amend. VI.

producing a reliable result.  Id. at 687.

The Supreme Court noted that "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."  Id. at 697; see also United States v. Gray, 878 F.2d 702, 710 (3d Cir. 1989) ("An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding is the error had no effect on the judgment.").  Therefore, failure to satisfy either prong of the Strickland analysis is grounds for dismissal.

To the extent that the Court should reach the merits of Petitioner's ineffective assistance of counsel claims, such do not demonstrate the requisite deficiency of counsel's performance and prejudice necessary to meet the standard set forth in Strickland and, therefore, are not meritorious.

### 1.    Ex Post Facto Violation

As noted, Petitioner's primary contention is that his sentence violates the Ex Post Facto Clause of the Constitution.[7]  Specifically, he alleges that his attorney was ineffective because he "failed to raise the [E]x [P]ost [F]acto [C]lause at the sentencing hearing" based on a 2002 increase in the statutory maximum penalty for wire fraud.  Pet'r's Br. 2.  Petitioner believes that the Court should have applied "the version of the guidelines in place at the start of the criminal activity."  Pet'r's Br. 1.  Because "Defendant's wire fraud scheme started in January 2000, which is under the old guidelines (5 year maximum sentence)," Petitioner concludes that his sentence for all counts of conviction should have totaled no more than five years, and therefore he should be resentenced.  Pet'r's Br. 1.  The Government responds with numerous reasons as to why

---

[7]  "No . . . ex post facto Law shall be passed."  U.S. Const. art. I, § 9, cl. 3.

Petitioner's sentence did not violate the Ex Post Facto Clause.  The Court agrees with the Government that there was no ex post facto violation; therefore, Petitioner's attorney was not ineffective for failing to raise the claim at sentencing.  The Court applied the correct edition of the Sentencing Guidelines, and therefore Petitioner cannot satisfy either prong of the Strickland analysis.  Because Petitioner's claims are not meritorious, his attorney's failure to raise them does not constitute ineffective assistance of counsel.  See United States v. Mannino, 212 F.3d 835, 840 (3d Cir. 2000).

The Ex Post Facto Clause forbids any law to impose "a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." Weaver v. Graham, 450 U.S. 24, 28 (1981).  The central function of the Ex Post Facto Clause is "to bar enactments which, by retroactive operation, increase the punishment for a crime after its commission." Garner v. Jones, 529 U.S. 244, 249 (2000).  Such laws "implicate the central concerns of the Ex Post Facto Clause: 'the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated.'" Lynce v. Mathis, 519 U.S. 433, 441 (1997) (quoting Weaver, 450 U.S. at 30).  In particular, it is usually a violation of the Ex Post Facto Clause to retrospectively apply changes in the sentencing guidelines that enhance the penalty for a crime.  See United States v. Menon, 24 F.3d 550, 566 (3d Cir. 1994) (citing Miller v. Florida, 482 U.S. 423, 431-35 (1987)).

In general, a sentencing court is to apply the edition of the Guidelines Manual that is in effect on the date that the defendant is sentenced.  United States v. Corrado, 53 F.3d 620, 622 (3d Cir. 1995); U.S. Sentencing Guidelines Manual § 1B1.11(a).  However, where "such retroactivity results in harsher penalties, Ex Post Facto Clause problems arise, and courts must apply the

earlier version." Corrado, 53 F.3d at 622; see also U.S. Sentencing Guidelines Manual §

1B1.11(b)(1) ("If . . . use of the Guidelines Manual in effect on the date that the defendant is

sentenced would violate the ex post facto clause . . . , the court shall use the Guidelines Manual

in effect on the date that the offense of conviction was committed.").  Once a sentencing court

deems proper a particular edition of the Guidelines Manual, that court is to apply that edition in

its entirety.  U.S. Sentencing Guidelines Manual § 1B1.11(b)(2).  In adopting the so-called "one

book rule," the Third Circuit held:

> [Section 1B1.11(b)(2)] expressly prohibits district courts from doing precisely what [the
> defendant] suggests the district court here should have done – namely, to mix and match
> provisions from different versions of the guidelines in order to tailor a more favorable
> sentence.  Because of its prohibitive nature, as well as the fact that we believe applying
> various provisions taken from different versions of the guidelines would upset the
> coherency and balance the Sentencing Commission obviously intended in promulgating
> the guidelines, we conclude that § 1B1.11(b)(2) is binding and, as such, was properly
> followed by the district court in this case.

Corrado, 53 F.3d at 624 (citation omitted).

Petitioner cites to no authority whatsoever for the apparent proposition that because the

Second Superseding Indictment covered conduct spanning a five-year period that straddled a

statutory change to the maximum sentence, he should enjoy the benefit of a sixty-month

maximum sentence for all ten counts.  The Court perceives Petitioner to purport that wire fraud is

a continuing offense, and therefore the Court should have treated all conduct from January, 2000

through March, 2005, as one, continuing offense for the purposes of sentencing.  The Court

agrees with the Government that Petitioner's contention is untenable.

First, courts that have previously addressed this issue have held that each use of the wires

constitutes a separate offense under 18 U.S.C. § 1343.  See, e.g., United States v. Williams, 527

14

F.3d 1235, 1241 (11th Cir. 2008) ("Where one scheme or artifice to defraud involves multiple

wire transmissions, each wire transmission may for the basis for a separate count."); United

States v. Garlick, 240 F.3d 789, 792 (9th Cir. 2001) (each use of the wires constitutes a separate

offense under the wire fraud statute); United States v. Luongo, 11 F.3d 7, 9 (1st Cir. 1993)

("Because each . . . count[ ] . . . reflects a distinct wire transfer of funds, each count describes a

separate violation of 18 U.S.C. § 1343 – even if the transfers collectively comprised a single

execution of a single scheme."); United States v. Alston, 609 F.2d 531, 535-36 (D.C. Cir. 1979)

("The mail and wire fraud statutes prescribe a penalty for each use of the mails or wires . . . .");

United States v. Calvert, 523 F.2d 895, 914 (8th Cir. 1975) (each use of the wires is a separate

offense under the wire fraud statute); Henderson v. United States, 425 F.2d 134, 138 n.4 (5th Cir.

1970) ("Each separate use of wire communication constitutes a separate offense under section

1343.").

Second, the Court is confident that the Third Circuit would agree with its sister courts if

presented with the issue.  In the context of the mail fraud statute, 18 U.S.C. § 1341, the Third

Circuit has held that "each mailing that is 'incident to an essential part of the scheme' constitutes

a violation."  Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1413 (3d Cir. 1991) (quoting

Pereira v. United States, 347 U.S. 1, 8 (1954)).  The Third Circuit has also ruled that the mail

fraud statute and the wire fraud statute are "in pari materia," and therefore cases construing one

of the statutes are applicable to the other statute as well.  United States v. Giovengo, 637 F.2d

941, 944 (3d Cir. 1980) (quoting United States v. Tarnopol, 561 F.2d 466, 475 (3d Cir. 1977),

abrogated on other grounds by Griffin v. United States, 502 U.S. 46 (1991)).  The Court is

persuaded by the considerable weight of authority that each use of the wires constitutes a separate

15

offense pursuant to 18 U.S.C. § 1343, even though all uses were for the purpose of executing and attempting to execute a single scheme or artifice to defraud.  Accordingly, Petitioner's contention that the Court should have treated all conduct between January, 2000 and March, 2005, as one, continuous offense for the purposes of sentencing is incorrect.

Third, even if Petitioner were correct and the Court was compelled to treat all counts as a single, continuing offense, Petitioner still would not be entitled to any relief.  Petitioner is incorrect that "the application of the version of the guidelines in place at the start of the criminal activity is to be used" when a continuing offense spans multiple days.  Pet'r's Br. 1.  Application Note 2 of the Guidelines Manual is instructive in such circumstances:

> Under subsection (b)(1), the last date of the offense of conviction is the controlling date for ex post facto purposes.  For example, if the offense of conviction (i.e., the conduct charged in the count of the indictment or information of which the defendant was convicted) was determined by the court to have been committed between October 15, 1991 and October 28, 1991, the date of October 28, 1991 is the controlling date for ex post facto purposes.  This is true even if the defendant's conduct relevant to the determination of the guideline range under § 1B1.3 (Relevant Conduct) included an act that occurred on November 2, 1991 (after a revised Guideline Manual took effect).

U.S. Sentencing Guidelines Manual § 1B1.11 cmt. n.2.  Furthermore, when a continuing offense straddles an amendment in the Sentencing Guidelines – including one that increases an offender's sentence – application of the amended guidelines does not violate the Ex Post Facto Clause.  United States v. Brennan, 326 F.3d 176, 198 (3d Cir. 2003); see also United States v. Duncan, 42 F.3d 97, 104 (2d Cir. 1994) ("continuing offenses . . . do not run afoul of the Ex Post Facto Clause if the criminal offenses continue after the relevant statute becomes effective"); United States v. Gibbs, 813 F.2d 596, 602 (3d Cir. 1987) (same), abrogated on other grounds by Apprendi v. New Jersey, 530 U.S. 466 (2000).

Therefore, even supposing that Petitioner's ten counts of conviction constituted a continuing offense, his argument for a reduction of his sentence due to violation of the Ex Post Facto Clause would still be ineffectual.  Nonetheless, each of Petitioner's counts was properly treated as a separate offense, and the rest of his claims must be considered in that context.

Petitioner's contention that the Court should have applied the so-called "January 2000 guidelines" to all counts is mistaken, no matter how the Court characterizes his offenses.[8]  The edition of the Guidelines Manual that was in effect in January, 2000 was no longer in effect when Petitioner committed the offense charged in Count One.  All ten counts of wire fraud to which Petitioner pled guilty occurred after the November 1, 2001 edition of the Guidelines became effective.

Petitioner also contends that the Court applied the "old guidelines" to Count One, and the "new guidelines" to Counts Two through Ten.  Pet'r's Br. 1.  He appears to believe that a maximum sentence is prescribed by the guidelines.  However, Petitioner is again mistaken; he has confounded the sentencing provisions of the wire fraud statute with those of the Sentencing Guidelines.  Petitioner received a significantly lesser sentence for Count One than he did for Counts Two through Ten because the Court recognized the ex post facto implications of sentencing Petitioner to anything greater than sixty months for Count One.  The Court sentenced Petitioner to sixty months on Count One because the conduct charged in that count occurred before Congress passed the Sarbanes-Oxley Act, 18 U.S.C. § 1350, in 2002.  The Court did not apply two different editions of the Guidelines Manual, as purported by Petitioner.

Furthermore, Petitioner's suggestion that any sentence in excess of five years would have

---

[8] The Guidelines Manual effective November 1, 1998 was still in effect in January, 2000.

violated the Ex Post Facto Clause is incorrect as well.  Petitioner signed a plea agreement and a

Rule 11 Application for Permission to Enter Plea of Guilty, which explicitly advised him of the

twenty-year maximum penalty for wire fraud.[9]  At his plea colloquy, the Court asked Petitioner if

he understood that there was a twenty-year maximum penalty for each count of wire fraud.

Petitioner told the Court that he understood:

> COURT: Now, you understand, as has been explained to me, you're going to plea guilty
> to Counts One through Ten.  That's ten separate counts of wire fraud in this matter.  Is
> that what you understand?
>
> GIBLIN: Yes.
> . . .
>
> COURT: Now do you understand that in each of these Counts that you're pleading guilty
> to, there's a maximum sentence of twenty years without parole?  You understand that?
>
> GIBLIN: Yes.
>
> COURT: So technically I guess if I made them all consecutive, it would be two hundred
> years.  You understand that?
>
> GIBLIN: He told me that.
>
> COURT: I mean I know you hope that doesn't happen.
>
> GIBLIN: Right.
>
> COURT: But you got to understand there's a potential here.
> . . .
>
> COURT: Now, do you understand that I don't have to sentence you within the Sentencing
> Guidelines.  I can go above those Guidelines, I can go below the Guidelines.  I can go up
> to the statutory maximum.  I can go down to whatever I want.  You understand that?

_____

[9] The plea agreement and Rule 11 Application state that the maximum penalty for all ten
counts is twenty years per count.  However, as noted, Count One alleged a wire transfer that
occurred because the passage of the Sarbanes-Oxley Act, 18 U.S.C. § 1350, and thus the Court
properly sentenced Petitioner to sixty months, the statutory maximum before the Act's passage,
on this count.

GIBLIN: Yes.

Plea Colloquy Tr. 20, 21, 24.  Even if all ten counts were capped by a five-year maximum, which they were not, Petitioner still would have been subject to up to fifty years of imprisonment. Here, Petitioner was sentenced to 115 months imprisonment, which is substantially lower than the maximum he could have faced, under any statutory scheme.  Therefore, a sentence in excess of five years was not a per se violation of the Ex Post Facto Clause.

Petitioner has not identified any colorable ex post facto claims and therefore all of Petitioner's claims can be summarily dismissed.  However, the Government points out that there may be a colorable claim on another basis.

As the Government notes, there was an amendmnent to the relevant wire fraud guideline – section 2B1.1(a)(1) – that took place in the edition effective November 1, 2003.  That section provided for a base offense level of 7, as opposed to 6, if the defendant was convicted of an offense referenced to that guideline that had a statutory maximum term of imprisonment of twenty years or more – e.g., 18 U.S.C. § 1343.[10]  U.S. Sentencing Guidelines Manual § 2B1.1(a)(1).  Because seven of the ten counts that Petitioner pled guilty to occurred after § 2B1.1(a)(1) became effective, the Court applied this section to Petitioner, pursuant to § 1B1.11(b)(3), which provides: "If the defendant is convicted of two offenses, the first committed before, and the second after, a revised edition of the Guidelines Manual became effective, the revised edition of the Guidelines Manual is to be applied to both offenses."  U.S. Sentencing

_____

[10] This amendment became effective in the first edition of the Guidelines Manual that was published subsequent to the Sarbanes-Oxley Act, and seems to have been the Sentencing Commission's response to Congress's intention to raise the penalties for certain crimes, including wire fraud.

Guidelines Manual § 1B1.11(b)(3).  The Sentencing Commission explains in the Commentary:

> Subsection (b)(3) provides that where the defendant is convicted of two offenses, the first committed before, and the second after, a revised edition of the Guidelines Manual became effective, the revised edition of the Guidelines Manual is to be applied to both offenses, even if the revised edition results in an increased penalty for the first offense. Because the defendant completed the second offense after the amendment to the guidelines took effect, the ex post facto clause does not prevent determining the sentence for that count based on the amended guidelines.  For example, if a defendant pleads guilty to a single count of embezzlement that occurred after the most recent edition of the Guidelines Manual became effective, the guideline range applicable in sentencing will encompass any relevant conduct (e.g., related embezzlement offenses that may have occurred prior to the effective date of the guideline amendments) for the offense of conviction.  The same would be true for a defendant convicted of two counts of embezzlement, one committed before the amendments were enacted, and the second after.  In this example, the ex post facto clause would not bar application of the amended guideline to the first conviction; a contrary conclusion would mean that such defendant was subject to a lower guideline range than if convicted only of the second offense. . . . Moreover, the approach set forth in subsection (b)(3) should be followed regardless of whether the offenses of conviction are the type in which the conduct is grouped under § 3D1.2(d).  The ex post facto clause does not distinguish between groupable and nongroupable offenses, and unless that clause would be violated, Congress's directive to apply the sentencing guidelines in effect at the time of sentencing must be followed. Under the guideline sentencing system, a single sentencing range is determine based on the defendant's overall conduct, even if there are multiple counts of conviction (see §§ 3D1.1 - 3D1.5, 5G1.2).  Thus, if a defendant is sentenced in January 1992 for a bank robbery committed in October 1988 and one committed in November 1991, the November 1991 Guidelines Manual should be used to determine a combined guideline range for both counts. . . .
> Consequently, even in a complex case involving multiple counts that occurred under several different versions of the Guidelines Manual, it will not be necessary to compare more than two manuals to determine the applicable guideline range – the manual in effect at the time the last offense of conviction was completed and the manual in effect at the time of sentencing.

U.S. Sentencing Guidelines Manual § 1B1.11 cmt. background.

The Third Circuit has not yet addressed the applicability of § 1B1.11(b)(3).  However, in a non-precedential opinion, the Third Circuit has cited § 1B1.11(b)(3) as authority for the proposition that the revised edition of the Guidelines Manual should be applied to all counts in

situations such as this one.  See United States v. Enright, 46 F. App'x 66, 73 (3d Cir. 2002).

The Government distinguishes Petitioner's case from United States v. Bertoli, 40 F.3d 1384 (3d Cir. 1994).  The Court agrees with the Government's assessment.  In Bertoli, the Third Circuit held that application of a cross reference in the 1993 Guidelines Manual for obstruction of justice was a violation of the Ex Post Facto Clause, where a substantive change in the commentary to the obstruction of justice guideline resulting in more severe penalties took effect after the crime was completed.  Id. at 1402-04.  There the defendant was convicted of two counts, obstruction of justice (Count Six) and conspiracy to obstruct justice (Count Three).  Id. at 1389. The district court found that the conduct of Count Six occurred in 1990, but that the conduct of Count Three did not cease until 1992.  Id. at 1403.  The district court applied the 1993 Guidelines Manual, reasoning that there was no substantive difference between that edition and the 1991 Guidelines Manual, that which was in effect when the court found that all the crime was completed.  Id.  That is, the district court grouped all the conduct and treated it as one course of conduct in determining which Guidelines Manual to apply.  The Third Circuit vacated the sentence and remanded for resentencing under the 1989 Guidelines Manual.  Id. at 1407.  The Third Circuit explained that "[b]ecause by using the 1993 Guidelines Manual, the trial court imposed a sentence in excess of what would have been permissible under the 1989 Manual, the sentence violated Bertoli's right against ex post facto punishment."  Id.  Under the 1989 Guidelines Manual, the cross-reference provision of the guideline for obstruction of justice – Count Three – would not have applied to the defendant's conduct.  Id. at 1404.

This case is distinguishable from Bertoli.  First, as the Government notes, the Third Circuit in Bertoli did not address relevant conduct pursuant to § 1B1.3 and did not address the

applicability of § 1B1.11(b)(3).  In ruling that application of the cross-reference would violate the defendant's right to be free from ex post facto punishments – "because a substantive change to the commentary to the obstruction of justice guideline, resulting in more severe penalties, took effect after the crime of Count Six was completed" – the Third Circuit held that the district court should have used the 1989 Guidelines Manual.  Id. at 1403.  Section 1B1.11(b)(3) was not included in the 1989 Guidelines Manual.

The Court further agrees with the Government that the reasoning of Bertoli does not apply to Petitioner's counts of conviction, which were all for the same offense.  As explained above, in Bertoli, the district court applied a cross-reference that increased Petitioner's sentencing range for Count Six.  However, at the time the defendant performed the conduct charged in Count Six, neither prior case law nor an obvious reading of the guideline would have resulted in an application of the cross-reference.  The amended commentary became effective after the Count Six conduct, but before the completion of the Count Three conduct.  Count Three, which charged a different offense than that of Count Six, required calculation of an offense level under a completely separate guideline.  Therefore, when the defendant performed the conduct charged in Count Six, he would have had no reason to be on notice that the guideline for Count Three had been made harsher in the interim.

On the other hand, here Petitioner repeatedly committed the same crime, and all counts of conviction were for the same offense.  Therefore, when Petitioner performed the conduct charged in Counts Three through Ten, he would have been on notice of the increased offense level.  The same guideline – § 2B1.1 – applied to all ten counts.

The majority of circuits have either upheld the constitutionality of § 1B1.11(b)(3)

directly, or ruled that applying the later guidelines in a multi-count conviction does not violate the Ex Post Facto Clause.  See, e.g., United States v. Duane, 533 F.3d 441, 449 (6th Cir. 2008) (application of § 1B1.11(b)(3) does not violate Ex Post Facto Clause where "offenses grouped together for sentencing purposes were committed before and after an amended version of the Guidelines went into effect"); United States v. Sullivan, 255 F.3d 1256, 1260 (10th Cir. 2001) (same); United States v. Lewis, 235 F.3d 215, 218 (4th Cir. 2000) (application of § 1B1.11(b)(3) does not violate Ex Post Facto Clause); United States v. Vivit, 214 F.3d 908, 919 (7th Cir. 2000) (same); United States v. Kimler, 167 F.3d 889, 895 (5th Cir. 1999) (same); see also United States v. Bailey, 123 F.3d 1381, 1406-07 (11th Cir. 1997) (use of Guidelines Manual in effect at completion date of latest count in multi-count conviction does not violate Ex Post Facto Clause); United States v. Cooper, 35 F.3d 1248, 1251-52 (8th Cir. 1994) (same), vacated, 514 U.S. 1094 (1995), reinstated, 63 F.3d 761 (8th Cir. 1995) (per curiam); United States v. Regan, 989 F.2d 44, 48 (1st Cir. 1994) (same).

Only the Ninth Circuit has explicitly found that application of § 1B1.11(b)(3) violates the Ex Post Facto Clause, under facts similar to, but distinguishable from, those found here.  See United States v. Ortland, 109 F.3d 539, 546 (9th Cir. 1997); see also United States v. Johnson, No. 98-0160, 1999 WL 395381, at *10 (N.D.N.Y. June 4, 1999) (citing reasoning in Ortland in holding same), aff'd on other grounds, 221 F.3d 83 (2d Cir. 2000).  In Ortland, the defendant appealed from his jury conviction and sentence for five counts of mail fraud that spanned a five-year period.  Id. at 541.  The conduct charged in four of the five counts occurred before an amendment to the Guidelines Manual became effective, one which resulted in an increased offense level for the defendant.  Id. at 546.  The district court sentenced the defendant under the

23

revised Guidelines Manual for all five counts.  Id.  The Ninth Circuit held that application of §

1B1.11(b)(3) violated the Ex Post Facto Clause under the facts of the case, and therefore vacated

the sentence.  Id. at 546-47.  However, the Ninth Circuit instructed the district court on remand to

sentence the defendant under the earlier Guidelines Manual on the first four counts and under the

revised Guidelines Manual on the fifth count.  Id. at 547.  The Ninth Circuit explained its

reasoning:

> Application of the policy statement in this case would violate the Constitution; its
> application would cause Ortland's sentence on earlier, completed counts to be increased
> by a later Guideline.  Moreover, the Commission's explanation is not entirely logical.
> The harm caused by the earlier offenses can be counted in sentencing the later one.  That
> does not mean that the punishment for the earlier offenses themselves can be increased,
> simply because the punishment for the later one can be.  In fact, were the later count to
> fall at some time after sentencing, all that would remain would be the earlier sentences,
> which would be too long.  There are, in fact, five separate crimes; each carries its own
> punishment, even if the sentences are all run concurrently to the extent that they overlap.

Id. (citation omitted).

The Court does not perceive application of the revised edition of the Guidelines Manual

to implicate the same ex post facto concerns as did the Ninth Circuit in Ortland.  Even if the

Court were inclined to adopt the Ninth Circuit's reasoning, the Court still would not change

Petitioner's sentence for the first three counts of wire fraud.  Because Petitioner's sentences run

concurrently for all ten counts, Petitioner would remain imprisoned for a total of 115 months

under the Ninth Circuit's sentencing scheme, and thus would not be able to show the requisite

prejudice.  Whereas the defendant in Ortland was sentenced following a jury conviction, here

Petitioner pled guilty, which is an admission that he "committed the crime charged against him."

North Carolina v. Alford, 400 U.S. 25, 32 (1970).  Because Petitioner does not argue that he is

innocent, or that he should not have been punished for any of Counts Four through Ten, the

24

Court does not see any reason those counts may "fall at some time after sentencing," thus exposing Petitioner to excessive sentences on Counts One through Three.  Contra Ortland, 109 F.3d at 547.

The Court also finds the Government's policy considerations to be persuasive.  Petitioner was convicted of ten counts of wire fraud that arose from a single scheme to defraud.  Had Petitioner plead guilty to just one count – one that occurred after the base offense level was increased from six to seven – then all of Petitioner's other criminal conduct would still have been treated as relevant conduct pursuant to § 1B1.3.  It would be completely illogical, and would produce perverse incentives, to rule that Petitioner should have received a lower base offense level simply because he plead guilty to more counts.  Accordingly, the Court agrees with the First, Fourth, Fifth, Sixth, Seventh, Eighth, Tenth, and Eleventh Circuits in holding that application of the revised edition of the Guidelines Manual does not violate the Ex Post Facto Clause in sentencing Petitioner to multiple counts.

**2.       Attorney Failed to Look into Possibility of 11(c)(1)(C) Plea Agreement**

Petitioner next asserts that he received ineffective assistance of counsel due to his attorney's failure to look into the possibility of an 11(c)(1)(C) plea agreement.  He claims that his attorney wrote a letter to him, advising him that "there is no such thing as 11[(c)(1)(C)] being used in plea agreements at the Federal Building in Camden, New Jersey."  Pet'r's Br. 2. Petitioner seems to suggest that he was prejudiced by his attorney's failure to secure a plea bargain "[w]here at sentencing, the judge could only sentence the defendant to exactly what the plea called for."  Pet'r's Br. 2.

Rule 11 of the Federal Rules of Criminal Procedure provides:

> If the defendant pleads guilty or nolo contendere to either a charged offense or a lesser or related offense, the plea agreement may specify that an attorney for the government will . . . (B) recommend, or agree not to oppose the defendant's request, that a particular sentence or sentencing range is appropriate or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply (such a recommendation or request does not bind the court); or (C) agree that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply (such a recommendation or request binds the court once the court accepts the plea agreement).

Fed. R. Crim. P. 11(c)(1)(C). "The main difference between the Type B agreement and the Type C agreement is that under Rule 11(c)(1)(C), the Government promises to 'agree,' which binds the district court at sentencing, and under Rule 11(c)(1)(B), the Government promises to 'recommend,' which does not bind the district court at sentencing." (citation omitted). United States v. Gillen, 449 F.3d 898, 902 (8th Cir. 2006).

Petitioner has failed to satisfy either prong of the Strickland analysis. First, the Government did not offer such a plea agreement. Counsel could not have been deficient in failing to pursue a Rule 11(c)(1)(C) plea agreement when no such agreement was offered by the Government. See United States v. Simmons, No. 95-2496, 1995 WL 739506, at *3 (E.D. Pa. 1995) ("Counsel also was not deficient in not pursuing a plea bargain when none was offered."), aff'd 96 F.3d 1436 (3d Cir. 1996). Petitioner is entitled to "effective" assistance of counsel, not the best assistance or even mistake-free assistance. See United States v. Gonzalez-Lopez, 548 U.S. 140, 147 (2006). Misinformation from the defendant's attorney before the entry of a guilty plea standing alone, does not constitute ineffective assistance of counsel. See United States v. Barker, 7 F.3d 629, 633 (7th Cir. 1993).

Second, Petitioner seems to assume that the Government would have entered into such an

26

agreement.  However, the Government refutes this contention.  Even if his attorney's statement and subsequent failure to seek such a plea agreement established deficiency, Petitioner would still be unable to prevail because he has failed to demonstrate, or even allege, prejudice.  The Court finds it highly improbable that the substantive stipulations contained in such a Rule 11(c)(1)(C) plea agreement would have been any different with respect to the terms of Petitioner's sentence that those upon which the parties actually agreed in this case.  The parties negotiated a plea agreement in which they agreed that a Guidelines sentence based on an offense level between 21 and 23 was reasonable.  That the Court was not bound by the stipulations of the parties' plea agreement is inapposite, because the Court did accept all stipulations.  "Petitioner again fails to demonstrate prejudice, because he has made no showing whatsoever that he would have received a more favorable sentence had he not entered into the plea agreement and proceeded to trial."  Senyszyn v. United States, No. 09-6170, 2010 WL 2483541, at *5 (D.N.J. 2010).

### 3.      Attorney Failed to Call Expert Witness to Testify at Sentencing

In his final claim of ineffective assistance of counsel, Petitioner asserts that his attorney failed to call Dr. Valerie Lorenz to testify at sentencing.  Dr. Lorenz, a Ph.D. from the Forensic Center on Compulsive Gambling, evaluated Petitioner prior to sentencing and prepared a written report that Petitioner's counsel submitted to this Court.  Petitioner claims that his attorney's failure to have Dr. Lorenz actually appear at sentencing prejudiced Petitioner because "Dr. Lorenz could have testified in court as to the severity of Defendant's gambling addiction."  Pet'r's Br. 2.  The Court finds that Petitioner's claim fails to satisfy either prong of the Strickland analysis.

27

First, Petitioner is unable to establish that counsel's performance was deficient.  While counsel does have a duty to make reasonable investigations, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."  Strickland, 466 U.S. at 690.  Counsel's actions were quite reasonable and demonstrated a high level of advocacy and professional competence.  Simply because this Court did not put much account in Dr. Lorenz's report does not retrospectively undermine the objective reasonableness of counsel's efforts.  That perhaps trial counsel could have done something else or something in addition to what was done is the kind of hindsight inquiry that Strickland prohibits.  See id. at 689.  Counsel's affirmative efforts to have Petitioner evaluated and supply this Court with Dr. Lorenz's report was sound strategy.

Second, even if counsel's performance was deficient, Petitioner has not satisfied the second prong of the Strickland analysis either.  "Prejudice resulting from ineffective assistance of counsel cannot be based on mere speculation as to what witnesses might have said."  D'Amario v. United States, 403 F. Supp. 2d 361, 372 (D.N.J. 2005) (citing Duncan v. Morton, 256 F.3d 189, 201-02 (3d Cir. 2001); Lewis v. Mazurkieicz, 915 F.2d 106, 113 (3d Cir. 1990)).  Petitioner argues: "Dr. Lorenz . . . could have testified in court as to the severity of the defendant's gambling addiction.  It would have provided the court with a complete overview of just how serious his gambling addiction is."  Pet'r's Br. 2.  However, Petitioner does not offer any examples of the type of relevant information or expert opinion Dr. Lorenz might have put forth had she been called to testify at Petitioner's sentencing hearing.  Furthermore, there was no need to call Dr. Lorenz to testify because counsel had already presented her report to the Court.  See Venezia v. United States, 884 F. Supp. 919, 924 (D.N.J. 1995) ("There obviously was no need

for expert testimony.  Everything an expert could have testified about was contained in the

comprehensive psychiatric report which petitioner's attorney arranged for and presented to the

Court."); see also Beckford v. United States, No. 07-4427, 2008 WL 2559305, at *4 (D.N.J. June

24, 2008) (counsel's decision not to call witness that "would have done nothing more than echo

[already introduced] evidence does not constitute ineffective assistance) (citing Snow v. Sirmons,

474 F.3d 693, 729 (10th Cir. 2007); United States v. Schaflander, 743 F.2d 714, 718 (9th Cir.

1984)).  Petitioner has not shown that but for counsel's alleged errors, there is a reasonable

probability that the result of his proceeding would have been different.  See Strickland, 466 U.S.

694.

### C.    Sentencing Court's Failure to Address All Sentencing Factors Pursuant to 18 U.S.C. § 3553(a)

In addition to his claims of ineffective assistance of counsel, Petitioner argues as a ground

for reduction or vacation of his sentence that the Court "did not address all of the 3553(A)

sentencing factors to be considered."  Pet'r's Br. 3.  Petitioner did not address this issue on

appeal and is raising this issue for the first time.  However, it is well established that a petitioner

may not obtain collateral relief based on errors not raised on direct appeal unless he can show

cause for his procedural default and actual prejudice resulting from the alleged errors.  See

United States v. Frady, 456 U.S. 152, 167-68 (1982); United States v. Essig, 10 F.3d 968, 979

(3d Cir. 1993) (holding that Frady's cause and prejudice standard applies to § 2255 proceedings);

see also Brennan v. United States, No. 04-4719, 2007 WL 1381752, at *3 (D.N.J. 2007).

Petitioner, for the first time, alleges that the Court failed to consider three factors under 18

U.S.C. § 3553(a) at sentencing.  However, Petitioner has not demonstrated adequate cause for

failing to raise these claims on direct appeal, nor has he otherwise shown the requisite prejudice resulting from the alleged errors.[11]  In his habeas petition, Petitioner states that the reason he did not raise the issue of the Court's alleged failure to consider all of the § 3553(a) sentencing factors is that he was waiting for the Third Circuit to resolve his vulnerable victim enhancement appeal.[12]  However, Petitioner's explanation does not excuse his initial failure to raise other issues on direct appeal as well.  Furthermore, as the Government notes, Petitioner's factual allegations are patently false and misstate the record; the Court did consider these factors, and therefore Petitioner's claims can be summarily dismissed.

### 1.    Diminished Capacity

Petitioner claims that "the court failed to take into consideration [his] gambling addiction."  Pet'r's Br. 3.  He states that the Court did not consider his alleged "pathological gambling addiction" at sentencing, as it is required to do so under U.S.S.G. § 5K2.13.  Pet'r's Br. 3.  Specifically, Petitioner writes: "A gambling addiction must be considered at sentencing, even for the possibility of a downward departure for reduced mental capacity based on a pathological

---

[11] When a petitioner raises a claim of ineffective assistance of counsel for the first time in a collateral attack, he need not demonstrate cause and prejudice.  United States v. DeRewal, 10 F.3d 100, 104 (3d Cir. 1993); Brennan v. United States, No. 04-4719, 2007 WL 1381752, at *3 (D.N.J. 2007).  However, here Petitioner claims ineffective assistance of counsel with respect to issues that are separate from those pertaining to the Court's alleged failure to consider all sentencing factors.  To the extent that the issues overlap, Petitioner failed to demonstrate ineffective assistance of counsel, and therefore he still must show cause and prejudice to abrogate an otherwise valid procedural default.

[12] Cause "'must be something external to the petitioner, something that cannot fairly be attributed to him.'"  Williams v. United States, No. 07-2684, 2008 WL 474112, at *6 (D.N.J. 2008) (quoting Coleman v. Thompson, 501 U.S. 722, 753 (1991)).  Petitioner has failed to allege anything "external" that might otherwise excuse his procedural default.

gambling addiction.  The court never considered this under 5[K]2.13."[13]  Pet'r's Br. 3.

Section 3553(a)(5) of Title 18 of the United States Code instructs the courts at sentencing

to consider any pertinent policy statements issued by the Sentencing Commission.  Section

5K2.13 of the Guidelines Manual – a policy statement covering downward departures due to

diminished capacity – provides:

> A downward departure may be warranted if (1) the defendant committed the offense while suffering from a significantly reduced mental capacity; and (2) the significantly reduced mental capacity contributed substantially to the commission of the offense.  Similarly, if a departure is warranted under this policy statement, the extent of the departure should reflect the extent to which the reduced mental capacity contributed to the commission of the offense.
> However, the court may not depart below the applicable guideline range if (1) the significantly reduced mental capacity was caused by the voluntary use of drugs or other intoxicants; (2) the facts and circumstances of the defendant's offense indicate a need to protect the public because the offense involved actual violence or a serious threat of violence; (3) the defendant's criminal history indicates a need to incarcerate the defendant to protect the public; or (4) the defendant has been convicted of an offense under chapter 71, 109A, 110, or 117, of title 18, United States Code.

U.S. Sentencing Guidelines Manual § 5K2.13.  However, "the requirements of section 5K2.13

are not easily met, [and] the district courts retain their discretion to deny a downward departure

even when a defendant does satisfy his burden."  United States v. McBroom, 124 F.3d 533, 548

(3d Cir. 1997).

As a threshold matter, Petitioner's claim that the Court never considered his alleged

pathological gambling addiction is patently false.  Petitioner even cites a statement made by the

Court at his sentencing hearing: "I am not persuaded that gambling was a big factor in all of

this."  Pet'r's Br. 3.  Throughout Petitioner's sentencing hearing, the Court emphasized the

---

[13] If Petitioner is now arguing for a downward departure, the Court notes that he is barred from doing so, pursuant to Stipulation 8 of Schedule A of his Plea Agreement.

importance of protecting the public from further crime by Petitioner.  In fact, the Court considered sentencing Petitioner above the guidelines recommendation in light of his deplorable criminal history, which included thirty-three convictions and sixteen sentences of some form of incarceration.  Thus, a departure under § 5K2.13 would have inappropriate.[14]

### 2.    Need to Avoid Unwarranted Sentence Disparities

Petitioner also claims that the Court never considered the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, pursuant to 18 U.S.C. § 3553(a)(6).  First, Petitioner has failed to explain how his sentence – one that fell within the Guidelines range – created any sentencing disparities. Petitioner does not cite any examples of similarly situated defendants with whom the Court might have compared sentences.  Second, Petitioner's accusation is patently false.  The Court specifically found, and stated at the sentencing, that the need to avoid unwarranted sentencing disparities was not a factor in this case.

### 3.    Need to Provide the Defendant with Needed Education or Vocational Training, or Other Correctional Treatment

Petitioner further claims that the Court "did not discuss at all the need to provide the

---

[14] The Court notes that other courts in this district have likewise refused to grant a downward departure under § 5K2.13 for diminished capacity, under a theory of some "pathological gambling disorder."  See, e.g., Venezia v. United States, 884 F. Supp. 919, 923 (D.N.J. 1995) (refusing to depart downward, and instead imposing upward adjustment "[t]o reflect the seriousness of petitioner's conduct and to protected the public"); United States v. LiButti, No. 92-0611, 1994 WL 774647, at *15 (denying 5K2.13 motion because "[i]t would be a miscarriage of justice to recognize [defendant]'s compulsive gambling as an excuse to avoid the full consequences of his own criminal decisions"); see also United States v. Cassese, 337 F. App'x 201, 204 (3d Cir. 2009) (affirming on other grounds district court's judgment of sentence in which court refused to grant § 5K2.13 downward departure on basis of compulsive gambling addiction).

defendant with needed educational or vocational training, or other correctional treatment in the most effective manner," pursuant to 18 U.S.C. § 3553(a)(2)(D).  Pet'r's Br. 3.  This claim is likewise plainly false.  In discussing this factor, the Court specifically stated: "I think Supervised release will try to address some of those issues."  Sentencing Tr. at 67.  The Court then imposed specific terms of Supervised Release that were intended to provide Petitioner with such treatment.  The Court ordered Petitioner, inter alia, to (1) refrain from all gambling activities, legal or otherwise; (2) attend Gamblers Anonymous or similar treatment at the direction of U.S. Probation; and (3) register on the self-exclusion list maintained by the New Jersey Casino Control Commission and Race Track Commission or any other state in which Petitioner resides during any portion of Supervised Release.  The Court also recommended that Petitioner participate in the Bureau of Prisons Inmate Financial Responsibility Program while incarcerated.

> **D.   Reasonableness of Sentence**

Petitioner's final ground for relief is that the Court erred in applying a two-level sentencing enhancement pursuant to § 3A1.1(b)(1) because of vulnerable victims.  In his petition for relief, Petitioner states that "[t]his is not an issue being raised in [his] [§] 2255 motion, as the Appeals Court all ready determined this."  Pet'r's Br. 4.  However, because this is the only issue that Petitioner discusses with respect to the reasonableness of his sentence, the Court feels compelled to address it.  The Third Circuit has already affirmed this Court's application of the enhancement when Petitioner raised the issue on direct appeal.  United States v. Giblin, 279 F. App'x 135 (3d Cir. 2008).  Pursuant to well-established Third Circuit precedent, Petitioner is therefore procedurally barred from relitigating this issue, including in his § 2255 petition.  See United States v. DeRewal, 10 F.3d 100, 105 n.4 (3d Cir. 1993) ("Section 2255 generally may not

33

be employed to relitigate questions which were raised and considered on direct appeal"); <u>Javadi v. United States</u>, No. 08-1675, 2009 WL 2407406, at *3 (D.N.J. 2009) (same).

### E.      Certificate of Appealability

Finally, the Court must assess whether a certificate of appealability should issue.  A litigant may not appeal from a final order in a proceeding under 28 U.S.C. § 2255 without a certificate of appealability.  28 U.S.C. § 2253(c)(1)(B).  The Local Appellate Rules for the Third Circuit state:

> At the time a final order denying a petition under 28 U.S.C. § 2254 or § 2255 is issued, the district judge will make a determination as to whether a certificate of appealability should issue . . . .  If an order denying a petition under § 2254 or § 2255 is accompanied by an opinion or a magistrate judge's report, it is sufficient if the order denying the certificate references the opinion or report.

L. App. R. 22.2.

A certificate of appealability shall not issue unless there is a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(C) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000).

Petitioner's claims here are based on a purported denial of his Sixth Amendment right to effective counsel, an alleged violation of his right to be free from ex post facto punishment, and alleged sentencing errors by the Court.  Based on the analysis above, the Court finds that Petitioner's claims are without merit.  Reasonable jurists would agree that in each of Petitioner's claims of error, he either did not show that his counsel's actions were unreasonable or he did not show that he suffered any prejudice.  Further, many of Petitioner's allegations are either

unsupported or directly contradicted by the record.  Therefore, the Court shall not issue a certificate of appealability.

**V.      CONCLUSION**

For the foregoing reasons, the Petition to vacate, set aside, or correct the sentence is DENIED.  The Court SHALL NOT ISSUE a certificate of appealability.  An appropriate Order shall follow.


Date: 8-3-2010                                    /s/ Robert B. Kugler
                                                  ROBERT B. KUGLER
                                                  United States District Judge